Ann L. MILLER, individually, and Ann L. Miller, Administratrix of the Estate of William M. Miller, deceased, and of the Estate of Elizabeth Madeline Miller, deceased, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 1107.

United States District Court
W. D. Pennsylvania.

Feb. 26, 1965.

Michael Hahalyak, Pittsburgh, Pa., for plaintiff.

Wallace E. Edgecombe, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

In this civil action diversity jurisdiction of the Court is invoked by plaintiffs. Defendant has filed a motion to dismiss under Rule 12(b) of the Rules of Civil Procedure.

It is noticed that plaintiffs in their complaint allege that defendant issued to William N. Miller, now deceased, what defendant calls an "Allstate Crusader Policy." Section II is titled—"PROTECTION AGAINST BODILY INJURY BY UNINSURED AUTOMOBILES."—It is under this provision that the suit is brought as plaintiffs allege that on or about August 22, 1963, while the policy was in force decedent Miller was driving his Volkswagen automobile in this District with his wife and young daughter as passengers when his car was negligently "struck in the rear by an unidentified motorist operating a hit and run automobile (as defined within the term 'uninsured automobile' in the said policy) * * *" causing the driver to lose control of the Volkswagen with the result that the car left the road causing the death of two of the occupants and serious injury to Mrs. Miller.

Defendant in its motion and in counsel's argument and brief indicates that the issue involves the interpretation of the contract between the parties, and that under the provisions of the policy the determination of legal liability and the amount of damages is an arbitrable issue.

It is noticed that in Section II under an illustration, the language used is—"bodily injury protection against uninsured motorists who are legally liable." It cannot be questioned but that under the terms of the policy the hazard insured against is that which arises from the owner or operator of an uninsured automobile. The persons insured against are stated to be:

"1. The named insured and his relatives while residents of his household; and

2. Any other person while in or upon, entering into or alighting from the owned automobile. * * *"

Under definition of words used in the policy " 'uninsured automobile' means an automobile:

"1. with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance applicable at the time of accident; or

"2. used without the permission of the owner thereof if there is no bodily injury liability insurance applicable at the time of the accident with respect to the operator thereof; * *."

Now referring to the complaint in the case it is readily seen that an unidentified motorist operating a hit and run automobile is not per se covered by the policy. In any event that issue is not presently raised but is mentioned in connection with the discussion as to arbitration.

Defendant asserts that the controversy between plaintiffs and defendant is to be decided under the arbitration terms of the policy which are covered in two paragraphs as follows:

"*Determination of legal liability and amount of damages*

"The determination as to whether the insured shall be legally entitled to recover damages, and if so entitled the amount thereof, shall be made by agreement between the insured and Allstate.

"In the event of disagreement and upon written demand of the insured, the matter or matters upon which the insured and Allstate do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. The insured and Allstate each agrees to consider itself bound and to be bound by any award made by the Arbitrator(s) pursuant to this Section II."

In answer to defendant's contention with regard to arbitration, plaintiffs say that it is not generally favored by the courts, and further that arbitration agreements must be strictly construed and are not to be extended by implication. It is said that to enforce an arbitration agreement the terms must be clear and unmistakable, otherwise the courts retain jurisdiction. See Commercial Union Assurance Co. v. Hocking, 115 Pa. 407, 8 A. 589, (1887) and Russo v. Independent Erection Co., Pittsburgh Legal Journal, 1946—Vol. 94, p. 232.

It is my view that years ago courts were loath to release any of their jurisdiction to arbitration. However, under modern conditions that view is outmoded and perhaps of necessity due to the vast amount of litigation in the courts resulting in crowded calendars. The courts have turned to arbitration as one of the solutions to congested dockets. As far

back at 1927 Pennsylvania passed an Arbitration Act. See 5 Purdon's Pennsylvania Statutes Annotated § 161 et seq.

In 1947 Congress by statute (9 U.S. C.A. § 1 et seq.) put its seal of approval upon maritime transactions and other transactions relating to interstate commerce wherein the parties had agreed to arbitrate disputes. Likewise the Supreme Court of the United States in numerous cases has indicated that arbitration provisions in collective bargaining agreements are desirable and are enforceable in the courts. See United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The current view of the courts is well expressed in 5 Am.Jur.2d, p. 522, where the paragraph reads:

"§ 5. *Attitude of courts concerning arbitration.*

"Although some of the courts formerly leaned strongly against enforcing arbitration agreements as tending to oust the courts from their lawful jurisdiction by private agreement, in some states arbitration early commanded much favor from the law as a means of promoting tranquillity and the prompt and equitable settlement of disputes. Since the enactment of the arbitration statutes, beginning with the New York act in 1921 the courts have generally looked with favor on arbitration as a shortcut to substantial justice."

Counsel for plaintiffs has indicated that plaintiffs do not wish to arbitrate this matter and have not availed themselves of the policy provision in that respect, and that those provisions cannot be enforced as plaintiffs have made no written demand upon the insured to arbitrate. It is noticed from the quotation above that in the event of a disagreement and upon written demand of the insured, the matter or matters upon which the parties do not agree shall be settled by arbitration, et cetera. De-

568

fendant stands ready to arbitrate according to its counsel and that is its position taken in the motion.

The lawsuit is perforce an indication of a disagreement between the parties. The complaint filed in the case is sufficient demand. To permit a lawsuit rather than arbitration under the circumstances is to affirm a frivolous sidestepping of the plain terms of the policy. It seems to the Court that the arbitration provisions of the policy are precise and complete. The rules of the American Arbitration Association are well known and are standard throughout the United States. Judgment in plaintiffs favor may be entered in any court having jurisdiction after arbitration is concluded, and the defendant has agreed to consider itself bound by the award made by the arbitrator.

In this instant case it is well to point to an issue previously mentioned. It is noticed that the policy does not require that an insured first pursue by suit and judgment a claim against an uninsured motorist. Defendant does not claim the rights of an ordinary surety in such a transaction. Defendant under its policy is willing to arbitrate all issues which arise from the accident. Among these issues are (1) the question as to whether the unidentified driver was the cause of the accident, and (2) whether he is an uninsured motorist under the terms of the policy, and (3) what damages have been suffered by plaintiff. These same issues are all trial issues in the event the case is retained in this Court and proceeds to trial. Some of those issues sound in tort and some in contract. But from a careful reading of the policy it becomes apparent that the parties to the contract have agreed that all of those issues are to be disposed of by arbitration. It is my view that the arbitration provisions of the policy should be enforced by this Court. In the state courts the statute provides that when a suit is brought on an issue referable to arbitration the Court should stay the trial pending the outcome. However, in the instant case it is be-lieved a dismissal without prejudice is the proper disposition, as it is permissible under federal practice, and all rights of plaintiffs are preserved.

It is so ordered.