### J. B. L. PRIMM ET AL. v. MENSING BROS. & Co.

Decided October 29, 1896.

**1. Powers of Executors—Supplies For Estate**

Where executors are authorized to carry on a plantation, they have power to incur a debt for supplies for use on the plantation.

**2. New Trial—Newly-Discovered Evidence.**

A motion for a new trial, on the ground of newly-discovered evidence, is not sufficient when no attempt was made to produce the evidence sooner, and previous knowledge of its existence is not denied.

APPEAL from Fayette. Tried below before Hon. H. TEICHMULLER.

*Phelps & Wolters,* for appellants.

*Moore & Duncan,* for appellees.—When there is no restriction upon the power of executors to manage the estate, and it is an estate administered independent of the courts, and no specific duties are enjoined, the executors will be authorized to do with reference to the estate any and all things which a Probate Court could lawfully empower them to do, if the estate was under the control of that tribunal. McDonough v. Cross, 40 Texas, 252; Allen v. Von Rosenberg, 16 S. W. Rep., 1098.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellees against the appellants, as executors of the estate of St. John Primm, deceased, to recover on certain promissory notes given for supplies furnished the executors to carry on a plantation for the benefit of the estate of their testator. The defense was that the goods were not purchased for the estate, but for the individual business of one of the executors. There was a trial by jury, and appellees recovered judgment for the amount of the debt sued on.

St. John Primm died in October, 1880, testate, leaving an estate worth about $80,000, consisting of a large plantation and other property. He left a widow, Frances M. Primm, and five children, to-wit, Julian B., Volney H., Albert Lee, Theodosia H., and Stella. He appointed as his executors the appellants, Frances M. Primm, his surviving wife, and J. B. L. Primm, W. C. Haller and F. S. Faust. They were authorized to manage the estate independently of the Probate Court, and without bond. The will was duly probated by the County Court of Fayette County, November 16, 1880, and all of the executors qualified. W. C. Haller died October 15, 1890. F. S. Faust died shortly afterwards, and before the institution of this suit. The appellants married in 1881, and are husband and wife, and have ever since resided on the plantation belonging to the estate of St. John Primm. They are both insolvent, and were when the indebtedness sued on was contracted.

St. John Primm devised his estate to his wife and children, and pro-

vided for the management, control and partition thereof by provisions of his will, which, so far as pertinent, are as follows:

"2. I give and bequeath my entire estate, real, personal and mixed property belonging to the same, whether situated in this State or elsewhere, to my wife Frances M. Primm and my children Julian B., Volney H., Albert Lee, Theodosia H., and Stella Primm, each of them to take an equal 1/6 part thereof  *  *  *.

"3. I direct that the entire estate be managed and controlled by my said wife and the executors of my will hereinafter named, during the minority of my children, for the purpose of comfortably maintaining the family and educating the children and increasing the estate by investing the surplus of revenues after defraying expenses.

"4. I desire my real estate situated in Fayette County, Texas, to be kept together unsold until my youngest child becomes of age, and also all stock and tools and farming utensils to be kept and maintained, so far as it may be necessary to carry on the plantation and farming operations  *  *  *.

"9. I appoint my said wife Frances M. Primm and my friends J. B. L. Primm, C. W. Haller and F. S. Faust the executors of this my last will. I desire that they be not required to give any bond or security, and manage and control the estate privately in accordance with the directions of this will, without any accountability to any court, and I desire that no action be had in any court concerning my estate, except the probating this will and the filing of an inventory and appraisement of all the property belonging to my estate.

"10. If all the executors herein named should fail to accept the trust and qualify, any two or more of them qualifying shall have all the powers and authority given in this will to executors."

In January, 1891, the appellants were residing upon and carrying on the plantation belonging to the estate, consisting of about 2000 acres with about 70 families of tenants cultivating the same. It was customary and necessary to advance supplies to the tenants, to enable them to make their crops. At that time the minor children of the testator had not arrived of age, and the estate had not been partitioned.

Appellees knew St. John Primm in his life time, and that he owned a large plantation, and that appellants were his executors. J. B. L. Primm went to Galveston in January, 1891, and called on the appellees, who were wholesale merchants doing business in that city. He informed them that he was one of the executors of the estate of St. John Primm, deceased; that said estate would need supplies during the year 1891 to run the tenants, and would not be able to pay for them until the crops were made. Appellees agreed to let him and his wife have the supplies in their capacity as executors, and shipped the goods to him as ordered. The goods were such supplies as were necessary for the tenants on the plantation to make a crop with, and such as would be necessary and useful for the comfort and maintenance of the family of deceased. The goods were sold and delivered in pursuance of the con-

tract, and the notes sued on and set out in the petition were given by the appellants to close the account. The notes and accounts set out in the petition are referred to and adopted as a part of this statement. For some years prior to the year 1891 J. B. L. Primm had been doing business in the store house of the plantation on his own account, and there was evidence tending to show that the goods sold him by appellees, for which the notes were executed, were for his private account, and that he sold them on such account to the tenants on the plantation. The foregoing conclusions, however, are made in accordance with the finding of the jury, which is fully supported by the evidence.

We do not think there can be any doubt about the power of the executors to create the debt, under the provisions of the will. Authority conferred by statute to carry on a plantation has been held to authorize the administrator to incur a debt for supplies advanced for that purpose. Revised Statutes (1879), art. 1931; Reinstein v. Smith, 65 Texas, 247. J. B. L. Primm had the authority to incur the liability alone, and without the necessity of joint action with his wife, who was the only other executor acting at the time. Revised Statutes (1895), art. 1989. The death of the co-executors Haller & Faust, after their qualification, did not affect this power. Revised Statutes; supra.

There is no error in the charge of the court prejudicial to the appellants. Nor was there any error in refusing the special charges asked by them. Under the sixth assignment of error, appellants complain that the verdict is contrary to the evidence, which showed that Frances M. Primm never knew that the contract had been made by her co-executor with appellees for the purchase of the goods, until she was called upon to sign the notes sued on; and that she then refused to sign them, or to ratify his contracting the indebtedness. It is immaterial whether she joined in the purchase of the supplies or not, provided they were such as were necessary for the purpose of carrying on the plantation; and this issue was properly submitted to the jury in the charge of the court.

In his testimony, the witness Mensing said that appellees had no business relations or dealings with J. B. L. Primm individually in the year 1889 or 1890; that he would not have advanced him credit, as he did not think he was solvent; that he knew of no business transactions between his firm and Primm prior to 1891. The appellant Frances M. Primm filed a supplement to the motion for a new trial filed by both appellants, setting forth that she was surprised by the above mentioned testimony; that she was certain her co-defendant, J. B. L. Primm, had had business relations with appellees in 1889 and 1890, and that she did not hear of the testimony until after the trial of the cause; that since the trial she had obtained access to the papers of her co-executor, and that they clearly showed that Mensing was mistaken in his evidence, and that appellees had extended credit to J. B. L. Primm individually during at least two years prior to 1891. Bills for goods and receipts for money were attached to the motion, which showed a number of transactions between appellees and J. B. L. Primm during 1889 and

1890, in which goods were billed and money receipted for to him.   She averred that her husband never would take any interest in defending the suit, further than to agree that a general denial might be filed for him.   The evidence would have been material as tending to prove the defense set up that the goods were sold to J. B. L. Primm on his individual account, but its materiality became evident before the trial of the case.   No reason is shown why no attempt was made to produce it sooner.   Previous knowledge of its existence is not denied.   We do not think that the showing is sufficient.

The judgment of the court below will be affirmed.

*Affirmed.*